DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from a judgment of the Lucas County Court of Common Pleas which denied appellant's motion to withdraw guilty pleas to one count of robbery and one count of escape. From that judgment, appellant raises the following assignment of error before this court:
 "THE TRIAL COURT ABUSED ITS DISCRETION AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT DENIED DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA."
On May 27, 1993, defendant-appellant, Sean M. Adams, was charged with one count of robbery by information (case No. CR93-6049). Thereafter, on June 3, 1993, Adams entered a plea of guilty to that charge pursuant to North Carolina v. Alford (1970),400 U.S. 25. By pleading guilty in this way, Adams avoided being indicted on two counts of aggravated robbery and one count of burglary and thereby avoided the possibility of a more severe sentence. Before accepting appellant's plea, the trial court conducted the requisite colloquy pursuant to Crim.R. 11. The state then explained what the evidence would have shown had the matter proceeded to trial:
 "Your Honor, had this matter proceeded to trial, the State of Ohio would have presented evidence to show that Sean Adams, in court here today, along with another adult defendant the Court just sentenced and two juvenile suspects were in the area of Western Avenue, specifically at the corner of Shasta and Finch, on March 31, 1993, at approximately 5:30 in the afternoon.
 "These four individuals approached a group of other juveniles ranging from the age of 12 to 14 years of age. The one juvenile then pulled out a knife and held it to the throat of one of the juveniles in an effort to obtain his sports jacket, which he eventually did.
 "Testimony from the individuals would have indicated that this defendant did, in fact, have some type of razor blade, knife, or cutting instrument in his hand and he did brandish it, although he did not hold it to anyone's throat. He did threaten this other individual by force to take his ball cap. They then fled that area and ran.
 "These juveniles that were the victims here went home and told their parents, who then went out looking for these individuals and saw them at Highland Park. A chase ensued during this period of time and this individual and two of the juvenile suspects then broke into an attached garage of an elderly woman there, and they barricaded themselves in there and were held there until the police arrived and placed them under arrest.
 "A search of that garage area then located the weapons, the two weapons that were involved in this incident."
The court further informed Adams that by entering an Alford plea he was consenting to the statement that the state made. Appellant stated that he understood. The court then found that appellant in open court was advised of all constitutional rights and made a knowing and voluntary waiver of those rights. Accordingly, the court accepted appellant's plea and found him guilty of robbery. On June 28, 1993, the trial court sentenced appellant to six to fifteen years incarceration for the robbery conviction.
On March 15, 1994, appellant filed a motion for shock probation. Upon consideration, the trial court granted the motion and suspended the remaining portion of appellant's sentence. The court then placed appellant on five years probation providing that he abide by certain specified conditions, including that he serve the first six months of his probation in the Work Release Program. On July 3, 1994, appellant walked away from the Work Release Facility. The court therefore issued a warrant for his arrest and on July 8, 1994, appellant was indicted and charged with one count of escape (case No. CR94-6258). In addition, in case No. CR93-6049, appellant was charged with a probation violation. On August 17, 1994, appellant pled guilty to the escape charge. Again, the trial court conducted the requisite colloquy and ascertained that appellant's plea was knowing and voluntary. In addition, appellant admitted walking away from the Work Release Facility and violating his probation. On September 7, 1994, appellant was sentenced to one year in prison for the escape conviction. In addition, his probation was revoked and the court ordered the enforcement of a modified sentence. That is, the court ordered appellant to serve four to fifteen years in prison for the robbery conviction. The court further ordered the escape sentence to run consecutively to the sentence on the robbery conviction.
On August 18, 1995, appellant filed a pro se motion to reduce his sentence in case No. CR93-6049. In that motion, appellant asserted that he did not commit the robbery. Rather, appellant stated, a Larry Wertz committed the robbery and appellant just happened to be with him at the time. In particular, appellant argued: "It is on file, in the victims [sic] own words, that I had nothing to do with the robbery, and I was not responsible for Mr. Wertz [sic] actions." The trial court denied appellant's motion to reduce his sentence.
On June 21, 1999, appellant filed a motion to withdraw his guilty plea in both the robbery and escape cases. First, appellant asserted that he was not guilty of the robbery. He supported this assertion with the affidavits of Ray Cunningham and Steven Green, the victims of the robbery. In his affidavit, Ray Cunningham stated that he was the victim in the Sean Adams prosecution and that the perpetrator of the aggravated robbery and assault on him was Larry Wertz. Cunningham continued that while appellant was in the area during the robbery of his starter jacket appellant did not take the jacket or put a knife to his throat. Cunningham stated that he only saw appellant running away with Wertz after Wertz robbed and assaulted him. In his affidavit, Steven Green stated that he too was a victim of the robbery at issue and that his baseball cap was taken from him by a man who he believed to be David Williams. Green stated that Williams knocked him to the ground, took his hat and ran away with Larry Wertz and appellant. Green further stated that he witnessed the attack on Cunningham and that Larry Wertz, not appellant, was the perpetrator of that attack. Based on these affidavits, appellant asserted that he was factually innocent and that his guilty plea should be withdrawn. With regard to his escape conviction, appellant asserted that he should be allowed to withdraw his guilty plea because he was not under "detention" when he walked away from the Work Release Facility.
The trial court held a hearing on appellant's motion at which Ray Cunningham, Steven Green, Officer Greg Mahlman and appellant testified. On December 27, 1999, the trial court issued an opinion and judgment entry denying appellant's motion to withdraw his guilty pleas. In his sole assignment of error, appellant now challenges that ruling.
A defendant has no absolute right to withdraw his guilty plea. State v. Xie (1992), 62 Ohio St.3d 521, paragraph one of the syllabus. A trial court, in its discretion, may set aside a guilty plea after sentencing to " * * * correct manifest injustice * * * ." Crim.R. 32.1. The burden is on the movant to show manifest injustice. State v. Smith (1977), 49 Ohio St.2d 261, paragraph one of the syllabus. A court's discretionary ruling will not be overturned on appeal absent an abuse of discretion. State v. Long
(1978), 53 Ohio St.2d 91, 98. An "abuse of discretion" is more than an error of law or of judgment, the term connotes that the court's attitude is arbitrary, unreasonable or unconscionable.Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
In the proceedings below, appellant submitted the testimony of Ray Cunningham and Steven Green as evidence that he did not commit the robbery on March 31, 1993. Appellant also asserted that he only recently became aware of this "newly discovered evidence" when Cunningham and Green turned eighteen years old and he was no longer prevented from interviewing them by their parents. At the hearing below, Cunningham testified that on March 31, 1993, his starter jacket was stolen at knife point by Larry Wertz. He further testified that the second assailant chased Steven Green, pushed him to the ground and stole his hat. He then stated that during these assaults, appellant was standing across the street but did not participate in the assaults. Appellant's only involvement in the situation was running with Wertz and Williams after the assault and robbery. Cunningham stated that he never saw appellant with a knife and never saw any communication between appellant and the assailants to indicate that appellant was involved in the robbery. Regarding the police investigation, Cunningham stated that he never told the police that appellant was involved in the robbery. However, he also stated that he knew appellant was prosecuted for the crime in 1993 and he never told the police or anyone that they had the wrong man.
Steven Green's testimony contradicted his affidavit which appellant had filed in support of his motion to withdraw his guilty plea. In particular, Green did not testify that his own hat was taken. Green testified that while Larry Wertz took Cunningham's coat at knife point, another assailant who Green stated was not appellant, put a razor blade to Joshua Young's throat and took his hat. Green also testified that he never saw appellant with a weapon and that appellant was not involved in the robbery. Rather, Green testified, during the incident appellant was standing on the sidewalk with two girls. Green also stated that he never spoke to the police about the incident and that they never took a report from him. However, he also acknowledged knowing that appellant had been convicted of the robbery.
In contrast to the evidence submitted by appellant, the state presented the testimony of Officer Greg Mahlman who had responded to the robbery call on March 31, 1993. Officer Mahlman testified that in his investigation, he spoke to Raymond Cunningham and Joshua Young, the victims of the robberies, who both described but did not name the assailants. Mahlman further testified that appellant matched the description of one of the assailants. Mahlman was also questioned about a report he completed upon investigating the incident. That report identifies Raymond Cunningham has "Victim #1" and Joshua Young as "Victim #2." The report also identifies Larry Wertz at "Suspect #1" and appellant as "Suspect #2." The report then reads in relevant part:
 "VICTIM 1 2 REPORTED THAT THEY WERE WALKING HOME FROM FOODTOWN WHEN THEY WERE APPROACHED BY SUSPECTS. SUSPECT 1 PLACED A KNIFE TO VICTIM 1'S THROAT AND STATED `GIVE ME YOUR COAT.' VICTIM 1 GAVE SUSPECT 1 HIS JACKET. SUSPECT 2 [APPELLANT] PRESENTED A UTILITY KNIFE AND ASK [SIC] FOR VICTIM #2 [SIC] CHICAGO BULLS BASEBALL CAP."
In evaluating this evidence, the trial court concluded that appellant had not established a manifest injustice to warrant the withdrawal of his guilty plea. We agree. In evaluating a post-sentence motion to withdraw a guilty plea, a trial court is vested with discretion in determining the good faith, credibility and weight of the movant's assertions in support of the motion.State v. Smith, supra at paragraph two of the syllabus. Undue delay between the occurrence of the claimed manifest injustice causing the invalid plea and the filing of a motion to withdraw is a factor that weighs against the movant's credibility. Id. at paragraph three of the syllabus. Appellant filed his motion approximately six years after he entered his Alford plea and approximately four years after notifying the court, through his motion to reduce sentence, that the victims knew that he was not involved in the robbery. At the time of the robbery, appellant matched the description of one of the assailants. In addition, he admits that he was with the assailants and ran from the scene with them after the robbery. Finally, we note that the testimony of Cunningham and Green is not inconsistent with appellant's entrance of an Alford plea as that plea allows a defendant to maintain his innocence while pleading guilty to a lesser charge in order to avoid conviction of a greater offense. Accordingly, we find that the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty plea in case No. CR93-6049.
Appellant further asserts that the court erred in denying his motion to withdraw his plea of guilty to the offense of escape. In support of this assertion, appellant argues that because he had been granted shock probation he was not under detention as that term is defined in R.C. 2921.01(E) and therefore could not be found guilty of escape. We disagree.
When appellant was granted shock probation, that probation was subject to certain conditions, including that appellant serve the first six months of the probationary period in a work release facility. In State v. Jansen (Dec. 5, 1997), Lucas App. No. L-96-041, unreported, this court recognized that when a defendant is assigned to a work release facility he is in "detention" as that term is defined in R.C. 2921.01(E). Accordingly, appellant was properly charged with escape under R.C.2921.34 and the trial court did not err in denying his motion to withdraw his guilty plea to that charge.
Finding that the trial court did not abuse its discretion in denying appellant's motion to withdraw his guilty pleas, the sole assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
 ___________________________ PIETRYKOWSKI, J.
 Peter M. Handwork, J., James R. Sherck, J., JUDGES CONCUR.